```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/12/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD CULLEY,

                      Plaintiff,

   -against-

EDWARDS MANUFACTURING COMPANY
OF ALBERT LEA,

                      Defendant.

No. 20-cv-7346 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Edward Culley ("Plaintiff") brings this action against Edwards Manufacturing Company of Alberta Lea ("Defendant"). Plaintiff asserts claims sounding in products liability under multiple tort theories and breach of express and implied warranties. (Compl. ¶¶ 3-31).

Presently before the Court is Defendant's motion for summary judgment seeking dismissal of Plaintiff's Complaint, (ECF No. 5), in its entirety. For the reasons articulated below, Defendant's motion is GRANTED, in part, and DENIED, in part.

**FACTUAL BACKGROUND**

The facts below are taken from Defendant's Local Rule 56.1 Statement ("Def. 56.1", ECF No. 57), Plaintiff's Response to Defendant's Local Rule 56.1 Statement ("Pl. Resp. 56.1", ECF No. 62, Ex. 1), Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1", ECF No. 62, Ex. 2), and Defendant's Response to Plaintiff's Local Rule 56.1 Statement ("Def. Resp. 56.1", ECF No. 59), affidavits, declarations, and exhibits,[1] and are not in dispute except where so noted.

---

[1] Citations to "Pl. Ex." Refer to Exhibits attached to the Memorandum of Law in Opposition to Defendant's motion for Summary Judgment (ECF No. 60). Citations to "Def. Ex." refer to Exhibits attached to Def. 56.1 (ECF No. 57). Citations to transcripts will be stylized to include the individual deponent's name, e.g. "Doe Tr.".

1

Plaintiff was injured on December 9, 2017 while working at Hudson River Truck and Trailer. (Def. 56.1 ¶¶ 1-2).

As part of his duties, Plaintiff used an ironworker made by Defendant (the "Ironworker") to fabricate metal pieces used in the construction of trailers. (*Id*. ¶ 3). The Ironworker had three workstations: (1) the punch station; (2) the shear station; and (3) the brake station. (*Id*. ¶ 5-8). Plaintiff was using the shear station when his injury occurred. (*Id*. ¶ 10).

The injury resulted from a piece of metal that was dislodged from the punch station, flying into Plaintiff's safety goggles, knocking those goggles to the top of Plaintiff's head, and lodging in Plaintiff's left eye. (*Id*. ¶ 11). The Ironworker was initially equipped with a front plexiglass shield, but that the shield was removed when Plaintiff was injured. (*Id*. ¶¶ 12-13; Pl. 56.1 ¶ 7). This front shield was reinstalled following Plaintiff's accident. (*Id*. ¶ 14). A representative of Defendant testified that the front shield was designed to protect from flying debris given the machine creates a tremendous amount of force at the punch station. (Pl. 56.1 ¶ 11).

On subsequent inspection, it was discovered that the die on the punch station was lifted out of its seat and set on an angle. (Pl. 56.1 ¶ 4). Further investigation determined that the punch had broken. (*Id*. ¶ 6).

Defendant maintained little documentation on the Ironworker, limited to an owner's manual and sales invoice. (Pl. 56.1 ¶ 10).

**PROCEDURAL HISTORY**

Plaintiff initiated this action on September 9, 2020. (ECF No. 1). Defendant answered on October 21, 2020. (ECF No. 11).

Discovery opened and progressed with numerous extensions, (*see, e.g.,* ECF Nos. 28, 34, 36, & 50), after which Defendant requested leave of this Court to file a motion for summary judgment on March 15, 2023. (ECF No. 52). The Court granted Defendant's request (*see* ECF No. 53), and the parties submitted their motion papers on June 14, 2024. (ECF Nos. 55-60).

Those papers consist of, among others: (1) Defendant's (a) Motion for Summary Judgment (ECF No. 55); (b) Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem", ECF No. 56); (c) Reply Memorandum of Law in Support of Motion for Summary Judgment ("Def. Reply", ECF No. 58); and (2) Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl. Opp.", ECF No. 6).

**LEGAL STANDARD**

**I.   Fed. R. Civ. P. 56**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus

shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

**DISCUSSION**

In his Complaint, (ECF No. 5), Plaintiff asserts claims under multiple products liability tort theories and breach of implied and express warranties. (Compl. ¶¶ 3-31). Before turning to the merits, the Court will initially address a procedural issue.

## I. Abandoned Claims

Defendant argues that Plaintiff has abandoned his products liability claim based on manufacturing defect, and his claims of breach of implied and express warranties. (Def. Reply p.1). Defendant raises arguments with respect to each of those claims in its initial memorandum of law in support of its motion for summary judgment. (*See* Def. Mem. pp.5, 8-9). Plaintiff does not acknowledge or respond to any of these arguments in his opposition. (*See generally* Pl. Opp.).

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Capak v. Epps, No. 18-CV-4325 (KHP), 2023 WL 2574879, at *2 (S.D.N.Y. Mar. 20, 2023) (quoting Xu v. City of New York, 2020 WL 2088301, at *4 (S.D.N.Y. Apr. 30, 2020)). Given Plaintiff has not responded in any fashion to Defendant's arguments with respect to his manufacturing defect and breach of implied and express warranties claims, the Court deems such claims abandoned.

Consequently, Defendant's motion for summary judgment with respect to Plaintiff's claims for products liability due to manufacturing defect, and breach of implied and express warranties is GRANTED, with those claims DISMISSED.

## II. Products Liability Claims

Plaintiff's remaining claims sound in products liability by way of design defect and failure to warn. Plaintiff appears to assert these claims under both strict liability and negligence theories.

(*See* Compl. ¶¶ 3-19, 26-31). The Court will briefly address the difference, if any, with respect to claims brought under those respective theories before turning to the merits of each claim.

### a. Negligence and Strict Liability

Despite operating as discrete theories of liability, courts often analyze negligence and strict liability claims concurrently on the basis that they are "functionally equivalent". *Nemes v. Dick's Sporting Goods, Inc.*, 521 F. Supp.3d 328, 340 (S.D.N.Y. 2021) (quoting *Erazo v. SCM Grp. N. Am.*, No. 16-CV-2386 RRM RER, 2019 WL 1044365, at *19 (E.D.N.Y. Mar. 5, 2019)). Indeed, the New York Court of Appeals has expressly endorsed that failure-to-warn claims, regardless of whether asserted under a strict liability or negligence theory, are "functionally equivalent, as both forms of a failure-to-warn claim depend on the principles of reasonable and public policy at the heart of any negligence action." *Erazo*, 2019 WL 1044365, at *19 (quoting *In re New York Asbestos Litig.*, 17 N.Y.3d 765, 787 (N.Y. 2016)). Accordingly, the Court will assess Plaintiff's failure-to-warn claims simultaneously.

The case law is murkier, however, with respect to differences of analysis when a plaintiff brings design defect claims under strict liability and negligence theories. The Second Circuit has questioned whether such claims are also functionally equivalent, and the New York Court of Appeals has itself stated that "the strict liability concept of 'defective design' [is] functionally synonymous with the earlier negligence concept of unreasonable designing." *Nemes*, 521 F. Supp.3d at 340 (quoting *Erazo*, 2019 WL 1044365, at *20 (quoting *Denny v. Ford Motor Co.*, 82 N.Y.2d 248, 258 (N.Y. 1995))). Moreover, multiple courts in this District, and even the Second Circuit, have relied on the foregoing statement from the New York Court of Appeals to treat design defect claims under strict liability and negligence theories as, in fact, functionally equivalent. *See Erazo*, 2019 WL 1044365, at *20 (collecting cases)).

The Court need not definitively hold whether the two theories are functionally equivalent or, if not, define the differences between the theories—Defendant's arguments with respect to design defect amount to assertions that the Ironworker was reasonably safe, as designed. (*See* Def. Mem. pp.5-8). As will be discussed below, Defendant's arguments are unpersuasive, and Plaintiff has sufficiently created a genuine dispute of material fact as to whether it was feasible to design the Ironworker in safer manner, an "element[] of design-defect claims under both strict product liability and negligence theories." *Erazo*, 2019 WL 1044365, at *20 (citing *Adamo v. Brown & Williamson Tobacco Corp.*, 11 N.Y.3d 545 (N.Y. 2008)).

As with Plaintiff's failure-to-warn claims, then, the Court will address the design defect claims under strict liability and negligence theories together.

### b. Design Defect

To sustain a claim for design defect, "the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing the plaintiff's injury." *Nemes*, 521 F. Supp.3d at 336 (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (N.Y. 1983)) (internal quotations omitted). A product is "not reasonably safe" when "a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Id*. (internal quotations omitted). A plaintiff is further required to "present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id*. (internal quotations omitted). "This standard demands an inquiry into such factors as (1) the product's utility to the public as a whole, (2) its utility to the individual user, (3) the likelihood that the product will cause injury, (4) the availability of a safer design, (5) the possibility

7

of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes." *Id*. (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 257 (N.Y. 1995)) (internal quotations omitted).

Defendant relies on the testimony of Plaintiff's expert witness that he did not find the design of a similar machine to the Ironworker to be unreasonably dangerous, and that it was safe to use. (Def. Mem. pp.5-6 citing Elphick Tr. p.89, 11; p.90, 12; p.96, 13; p.97, 10). Defendant also relies on the expert witness' testimony that any hazard was mitigated when the Ironworker was re-fitted with the guard at the punch station as originally designed. (*Id*. pp.6-8).

Plaintiff contends that finding the die broken following Plaintiff's injury creates a question of fact as to whether the Ironworker was in some way defective. (Pl. Opp. p.8). Plaintiff further argues that Defendant is taking the testimony of Plaintiff's expert witness out of context and submits the expert's report finding that the Ironworker should have had an additional guard to the one it was originally designed with to prevent Plaintiff's injury. (*Id*.; *see also* Pl. Ex. 4 at 8.a.i-iiv). He has also cites case law stating "[t]he issue of whether a product is defectively designed such that its utility does not outweigh its inherent danger is generally 'one for the jury to decide . . . in light of all the evidence presented by both the plaintiff and defendant." (*Id*. at p.9 (citing *Yung Tung Chow v. Reckitt & Colman, Inc.*, 17 N.Y.3d 29, 33 (N.Y. 2011) (quoting *Voss*, 59 N.Y.2d at 108))). Moreover, Plaintiff asserts that "[w]here . . . a qualified expert opines that a particular product is defective or dangerous, describes why it is dangerous, explains how it can be made safer, and concludes that it is feasible to do so, it is usually for the jury to make the required risk-

8

utility analysis." (*Id.* (citing *Milazzo v. Premium Technical Services Corp.*, 7 A.D.3d 586, 588 (2d Dept. 2004)).

Plaintiff's arguments are availing. For one, the parties' selective citations to the testimony and work product of the Plaintiff's expert witness reveal inconsistencies—that is, genuine disputes of material facts, particularly with respect to whether the Ironworker required a rear guard in addition to the guard that was initially included in its design. Moreover, to the extent Defendant cites to the expert's testimony regarding the safety of the design, the expert is not testifying as to the Ironworker, but to another machine of similar design he worked with in the past. (Def. Mem. pp.5-6 citing Elphick Tr. p.89, 11; p.90, 12; p.96, 13; p.97, 10). The jury should have the opportunity to weigh such testimony, as it certainly does not rise to the level that the Ironworker was indisputably safe.

The Court is also moved by the weight of authority presented by Plaintiff that a risk-utility analysis is generally one for the jury. Plaintiff has sufficiently put in play that the Ironworker would have been a safer and prevented Plaintiff's injury if equipped with a rear guard as well as the front guard it was originally designed with—and that doing so was feasible. (*See* Pl. Ex. 3 ¶¶ 5-6). Consequently, the final determination on that front belongs to the jury.

In light of the foregoing, Defendant's motion for summary judgment with respect to Plaintiff's strict liability design defect claim is DENIED.

### c. Failure to Warn

A failure-to-warn claim requires plaintiffs to show: "[1] that a manufacturer has a duty to warn; [2] against dangers resulting from foreseeable uses about which it knew or should have known; and [3] that the failure to do so was the proximate cause of harm." *Vuksanovich v. Airbus Americas, Inc.*, 608 F. Supp.3d 92, 112 (S.D.N.Y. 2022) (quoting *SUEZ Water N.Y. Inc. v. E.I. du*

*Pont de Nemours & Co.*, 578 F. Supp.3d 511, 562 (S.D.N.Y. 2022) (internal quotations omitted). Manufacturers have a duty to warn against "(1) . . . latent dangers resulting from foreseeable uses of its product of which it knew or should have known, and (2) of the danger of unintended uses of a product provided these uses are reasonably foreseeable." *Roman v. Sprint Nextel Corp.*, No. 12 Civ. 276 (VEC), 2014 WL 5026093, at *13 (S.D.N.Y. Sept. 29, 2014) (quoting *Bee v. Novartis Pharmaceuticals Corp.*, 18 F. Supp.3d 268, 283 (E.D.N.Y. 2014)). "This duty is a continuous one, and requires that a manufacturer be aware of the current information concerning the safety of its product." *Id*. "[S]ummary judgment is appropriate where a plaintiff has not introduced any evidence that a manufacturer knew or should have known of the danger at issue." *Bee*, 18 F. Supp.3d at 283.

Defendant argues that Plaintiff has identified no warning that Defendant was obligated to provide. (Def. Mem. p.8). Defendant further argues that Plaintiff has produced no evidence suggesting how any such warning could have prevented Plaintiff's injury. (*Id*.).

Plaintiff proffers two theories. First, Plaintiff asserts that the Ironworker's owner's manual does not contain warnings as to potential dangers that arise when the die and punch are misaligned, and the Ironworker, itself, lacks any warnings with respect to misalignment. (Pl. Opp. p.10). Second, Plaintiff cites case law for the proposition that defendant manufacturers may be held liable for dangers that become known via user operation and experience. (*Id*.). As such, argues Plaintiff, Defendant's failure to maintain a system to "track complaints, concerns, customer issues, or other problems [. . .]" cannot serve as a shield from this theory of liability. (*Id*.). In essence, Plaintiff asserts that Defendant's alleged "deliberate indifference . . . or conscious avoidance" is enough to stave off summary judgment. (*Id*.).

Plaintiff has demonstrated a genuine dispute of material fact as to whether Defendant was aware of the danger attendant to the Ironworker when it is not equipped with a rear guard. Plaintiff's expert's report cites testimony from a representative of Defendant[2] wherein the representative testified the Ironworker was redesigned in either 2006 or 2007—well before Plaintiff's injury—to include a rear guard. (Pl. Ex. 4 pp.11-13). Taking such fact in the light most favorable to Plaintiff, a reasonable jury could conclude that as of 2006 or 2007, Defendant was "aware of the current information concerning the safety of its product", *Roman*, 2014 WL 5026093, at *13. That is to say that Defendant was aware the Ironworker without a rear guard amounted to a "latent danger[] resulting from [the] foreseeable use[] of its product" and thus had a duty to warn as to such danger. *Roman*, 2014 WL 5026093, at *13.

Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's failure-to-warn claims is DENIED.

## CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment is GRANTED, in part, and DENIED, in part.

Defendant's motion is GRANTED with respect to Plaintiff's claims alleging manufacturing defect and breach of express or implied warranties.

Defendant's motion is DENIED with respect to Plaintiff's claims alleging design defect and failure to warn.

.       A telephonic Pretrial Conference is scheduled for May 31, 2024 at 3:00 p.m. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest.

---

[2] Notably, the excerpt of this testimony provided by Plaintiff does not include the exchange cited by Plaintiff's expert. (*See generally,* Konkle Tr.).

11

The Clerk of the Court is directed to terminate the motion at ECF No. 55.

Dated: April 12, 2024  SO ORDERED:
      White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge